Civil Action No. 21-mc-353-RGA

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAXUS ENERGY CORPORATION, | Case No. 16-11501 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| MAXUS LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 18-50489 (CSS) |
| YPF S.A., et al., | |
| Defendants. | |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., and CLH HOLDINGS, INC., | |
| Appellants, | Appeal from the United States Bankruptcy Court for the District of Delaware |
| v. | |
| MAXUS LIQUIDATING TRUST, | |
| Appellees. | |

## APPELLANTS' EMERGENCY MOTION FOR STAY PENDING RULING ON REQUEST FOR INTERLOCUTORY APPEAL

---

[1]    The Debtors in the above-captioned Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7620), Maxus (U.S.) Exploration Company (2349), and Gateway Coal Company (7425).  The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................ ii

PRELIMINARY STATEMENT ..................................................... 4

BACKGROUND ......................................................................... 7

RELIEF REQUESTED................................................................ 9

BASIS FOR RELIEF.................................................................. 9

A. Appellants Have, At Minimum, A "Reasonable Chance" Of
Obtaining Interlocutory Reversal Of The Order......................... 11

B. Absent A Stay, Appellants Will Suffer Irreparable Harm ........... 15

C. A Stay Pending Appeal Will Not Injure The Trust .................... 16

D. The Public Interest In Preserving Legal Privilege Favors A Stay ... 19

CONCLUSION.......................................................................... 19

CERTIFICATION OF COMPLIANCE ......................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Enhanced Sec. Rsch. LLC v. Cisco Sys, Inc.*,
2010 WL 2573925 (D. Del. June 25, 2010) ............................................................ 17

*Haines v. Liggett Grp., Inc.*,
975 F.2d 81 (3d Cir. 1992) ............................................................................... 5, 19

*Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*,
2014 WL 3887750 (E.D. Pa. Aug. 7, 2014) ......................................................... 9-10

*In re Ford Motor Co.*,
110 F.3d 954 (3d Cir. 1997), *abrogated on other grounds by Mohawk Indus., Inc. v.*
*Carpenter*, 558 U.S. 100 (2009) ........................................................................ 5, 16

*In re Kellogg Brown & Root, Inc.*,
756 F.3d 754 (D.C. Cir. 2014) .............................................................................. 16

*In re Lott*,
139 F. App'x 658 (6th Cir. 2005) .......................................................................... 15

*In re Marvel Ent. Grp., Inc.*,
209 B.R. 832 (D. Del. 1997) ................................................................................ 10

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015) ................................................................................ 11

*Invista N.A. S. À.R.L. v. M & G USA Corp.*,
2013 WL 1614971 (D. Del. Apr. 5, 2013) .............................................................. 15

*Irth Sols., LLC v. Windstream Commc'ns, LLC*,
2018 WL 1870140 (S.D. Ohio Apr. 19, 2018) ....................................................... 10

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) .................................................................................... *passim*

*N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co. LLC*,
2011 WL 4571727 (W.D. Pa. July 13, 2011) ......................................................... 17

*Project Vote/Voting for Am., Inc. v. Long*,
275 F.R.D. 473 (E.D. Va. 2011) ........................................................................... 15

*Stuart v. State Farm Fire and Cas. Co.*,
  2017 WL 5952872 (W.D. Ark. Jan. 25, 2017) .......................................................15

*U.S. v. Microsoft Corp.*,
  2017 WL 1788411 (W.D. Wash. May 5, 2017)........................................................13

*Wadhwa v. Dep't of Veterans Affs*,
  2011 WL 13287074 (D.N.J. Feb. 1, 2011) .............................................................18

*Zander v. Craig Hosp.*,
  2010 WL 1571213 (D. Colo. Apr. 20, 2010).........................................................15

## Rules

Fed. R. Bankr. P. 8007 ................................................................................................9

Fed. R. Bankr. P. 8013(d)(2)(B) ................................................................................9

Del. Bankr. L.R. 9006-2..............................................................................................7

## Other Authorities

Wright & Miller, 8 Fed. Prac. & Proc. Civ. (3d ed. 2017) ........................................5

Repsol International Finance B.V. Interim Consolidated Financial Report (July 29,
  2021), https://www.repsol.com/content/dam/repsol-corporate/en_gb/accionistas-e-
  inversores/rif/2021/on29072021-repsol-financial-report.pdf ................................18

YPF S.A., YPF International S.A., YPF Holdings, Inc., and CLH Holdings, Inc. (collectively, the "Appellants"), by and through their undersigned counsel, respectfully request that this Court through this emergency motion ("Motion") enter an order granting a stay of production of three categories of privileged documents identified in Appellants' privilege log purportedly concerning Project Jazz[2] (the "Project Jazz Documents") pending appeal of the Bankruptcy Court's order [D.I. 490], dated August 19, 2021 ("Order") and the corresponding August 16, 2021 Opinion [D.I. 482] ("Opinion").[3]

## PRELIMINARY STATEMENT

1.     There is no doubt that the Bankruptcy Court's Opinion and Order that are the subject of Appellants' September 2, 2021 Motion for Leave to File Interlocutory Appeal [Appeal Dkt. 1] (the "Motion for Leave") must, and ultimately will be, reversed.  The Bankruptcy Court disregarded sacrosanct principles of privilege law espoused not only by the Third Circuit, but every court from the Supreme Court down.  Upending established black-letter law in multiple respects, the Bankruptcy Court (i) circumvented the subject-matter waiver analysis mandated by the Third Circuit by declaring that as a matter of law confidential, unshared legal advice provided by Appellants' counsel and duly logged a year-and-a-half ago (which log has never been challenged) was not privileged in the first place solely because of the alleged disclosure of *other* communications, (ii) refused to perform the document-by-document review required by the Third Circuit because the parties' agreement to the exchange of categorical privilege logs effected a waiver of that requirement, and (iii) further declined such document-by-document review because

---

[2]     The categories of documents at issue here (Categories 10, 11, and 17) specifically request production of "legal advice."  Trust Motion to Compel [D.I. 452] at 2-3.  The definitions of the categories also make clear that the documents at issue go far beyond "Project Jazz" (even as broadly defined by the Trust).

[3]     Unless otherwise stated, citations to "D.I." are citations to the Bankruptcy Court adversary proceeding docket, No. 18-50489.  All terms not defined herein shall have the same meaning as ascribed in the Motion for Leave.

the Trust was "tardy" in filing its motion to compel until the "11th hour" on the eve of the close of fact discovery.

2.       If the Order is not stayed while this Court considers whether to grant the Motion for Leave, Appellants will be irreparably harmed.  As the Third Circuit declared, attorney-client privilege is among the most "sacred and so compellingly important" privileges and "courts must, within their limits, guard it jealously." *Haines v. Liggett Grp., Inc*., 975 F.2d 81, 90 (3d Cir. 1992). *See* Wright & Miller, 8 Fed. Prac. & Proc. Civ. (3d ed. 2017).  Post-disclosure relief cannot fully undo the harm; in the words of the Third Circuit, "the cat is already out of the bag," and "there is no way to unscramble the egg scrambled by the disclosure; the baby has been thrown out with the bath water." *In re Ford Motor Co*., 110 F.3d 954, 963 (3d Cir. 1997), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).

3.       Not only did the Bankruptcy Court eviscerate Appellants' privilege by employing a novel theory, it denied them due process, establishing the presence of special circumstances which make the need for an emergency stay and interlocutory appeal all the more compelling under the Supreme Court's guidance in *Mohawk*.  The Trust's motion explicitly asked the Bankruptcy Court to find a *subject-matter waiver* of privilege.  *See* Motion to Compel [D.I. 452] at 11 ("The question now is whether, given the scope of the Project Jazz disclosures to Maxus, the *waiver* should be extended to related, but not disclosed, communications.") (emphasis added); Opinion at 1 ("the Trust argues that the YPF Defendants have *waived* attorney client privilege") (emphasis added).  This necessarily acknowledged that the documents were otherwise privileged and, indeed, the Trust's document requests expressly sought production of Appellants' "legal advice."  Motion to Compel [D.I. 452] at 2-3.

4.      The burden of proving waiver was undeniably on the Trust.  It was only in reply –
*after* Appellants had their only opportunity to submit argument and evidence in opposition – that
the Trust first suggested the Court find the documents not privileged, following which the Court
ruled Appellants had not met their burden to establish privilege despite having not been on notice
until reply that the Trust was even challenging it.  The Third Circuit has strict requirements for a
finding of subject-matter waiver over privileged documents.  The Trust could not, and did not
attempt to, satisfy many of these requirements and therefore, the Bankruptcy Court side-stepped
its obligations by declaring, as a matter of law, that a party cannot receive privileged legal advice
whenever the "facts and issues surrounding" the subject of such advice are not confidential.  Also
as a matter of law, the Bankruptcy Court held that "with [the] benefits [of agreeing to categorical
privilege logs] comes the burdens" of waiver of the right to document-by-document review before
a trial court may find those documents not privileged.  These were radical departures from well-
settled privilege law.

5.      Even were it possible to "unscramble the eggs" with post-trial relief, this litigation
would be set back several years at a cost of millions of dollars.  To the extent that the Bankruptcy
Court's prior rulings[4] have not already done so, the Opinion and Order will irreparably taint any
trial and guarantee Appellants a "do-over" in the event of an adverse ruling.  But that result comes
at a significant cost – the years of wasted effort, millions of dollars in legal and expert expenses,
and substantial expenditure of judicial resources, not to mention the harm in the forced and
improper disclosure of Appellants' privileged documents.  A modest stay while this Court
considers the Motion for Leave ensures that, if this Court agrees the Bankruptcy Court erroneously

---

[4]      In a meet and confer last November, lead counsel for the Trust bragged that he was "23-0" in disputes with
the Appellants adjudicated by the Bankruptcy Court.  Since that time, the Bankruptcy Court has issued more than a
half dozen further rulings, all in favor of the Trust.  One party winning 30 consecutive decisions in a litigation is
virtually unheard of in major commercial litigation.

ran roughshod over Appellants' protected privileges, it retains the ability to correct course before harm is inflicted.[5]  *See* Sept. 14, 2021 Hr'g Tr. (Mot. Ex. C) 19:7-16.

6.      Appellants do not make this motion lightly, but this Opinion and Order are unprecedented.  There is no legal support whatsoever for them, and unless the Order is stayed, Appellants will be compelled to turn over some of their most privileged documents, including their counsel's confidential analyses and strategies with respect to defending the very claims brought in this lawsuit, all without the Bankruptcy Court pausing for even a moment to review a single document.  *See* Sept. 14, 2021 Hr'g Tr. (Mot. Ex. C) at 14:5-17; 15:16-17:5.

## **BACKGROUND**

7.      To avoid repetition and for efficiency, Appellants respectfully refer to and incorporate the Statement of Relevant Facts at paragraphs 10 to 25 of their Motion for Leave [App. Dkt. 1] and annexed hereto as Exhibit A.

8.      On August 30, 2021, Appellants filed a motion to stay before the Bankruptcy Court [D.I. 492], relying on Local Bankruptcy Rule 9006-2 to extend the due date of their production pending the Bankruptcy Court's adjudication of that motion.  On September 1, the Bankruptcy Court held a Status Conference [D.I. 506] regarding the stay motion, at which the Bankruptcy Court set the briefing schedule.  At the start of this conference, the Bankruptcy Court "noted that YPF had filed a motion for stay of the discovery order, I think on August 30th, which was the day that the documents were to be produced under the order, which is of course *perfectly appropriate*." Sept. 1 Status Conference Tr. [D.I. 506] (Ex. B), 4:9-13 (emphasis added).  The Bankruptcy Court also inquired whether Appellants had yet moved this Court for a stay, stating that it was

---

[5]      In urging this Court to correct course with respect to the forced production of the Project Jazz Documents, Appellants expressly preserve their argument that other rulings of the Bankruptcy Court constitute reversible error and do not intend to imply otherwise.

unnecessary to do so before the Bankruptcy Court rules because "even if I rule from the bench on the 13th, assume – and I have not made up my mind, but assume arguendo I deny it, they're going to need time to go to the district court …. I would at the very least give Judge Andrews, you know, a couple days to actually make his decision, which is what I did, for example, in Exide recently, I gave him a whole week, which he was able to … fit in." *Id.* at 8:3-15

9.       On September 7, the Trust filed its opposition to the stay motion and a cross-motion to sanction Appellants for not producing the privileged Project Jazz Documents on August 30, 2021 even though the Bankruptcy Court had called the timing of the stay application "perfectly appropriate." [D.I. 507].   Appellants filed their reply and opposition to the cross-motion for sanctions on September 12 [D.I. 512].  Yesterday, the Bankruptcy Court held a hearing on the stay motion and cross-motion for sanctions.  During this hearing, the Bankruptcy Court called into question Appellants' expectations that they could rely on the Bankruptcy Court's prior comments that this Court would be given sufficient time to consider a stay following the Bankruptcy Court's near certain denial of the stay given the Trust's record in this case.  Specifically, the Bankruptcy Court suggested that it might indeed sanction Appellants for not producing documents despite having previously described the timing of their stay application as "perfectly appropriate".  In contrast to its conduct toward Appellants' counsel, the Bankruptcy Court never once pushed back on the Trust's criticism of Appellants for not yet moving this Court for a stay even though they had only done so after receiving the Bankruptcy Court's assurances that it was "unnecessary" because adequate time for appeal to this Court would be afforded.  Additionally, the overt threat of contempt was made by the Trust at yesterday's hearing and not rejected by the Bankruptcy Court – with the Trust suggesting that Appellants be held in contempt, even while they seek relief

from this Court – counsel in favor of this anticipatory motion notwithstanding the Bankruptcy Court's prior assurances.

10.     Thus, while Appellants had anticipated waiting first for the Bankruptcy Court to rule, out of an abundance of caution in light of statements made during yesterday's hearing, Appellants now move this Court in advance of the Bankruptcy Court's ruling, which is expected by end of this week.  Appellants will supplement this emergency motion when the decision is issued.  Given the emergency nature of this relief and the concern that the Bankruptcy Court will restrict the time for compliance pending this Court's consideration, Appellants submit herewith as Exhibits E-G the parties' respective briefs to the Bankruptcy Court, which raised the same grounds addressed in the instant motion pursuant to Bankruptcy Rule 8013(d)(2)(B), in order to provide this Court with an opportunity to fully apprehend the Trust's position and Appellants' response.

## **RELIEF REQUESTED**

11.     Pursuant to Bankruptcy Rule 8007, Appellants request that the Court stay the Order until the Motion for Leave is resolved.

## **BASIS FOR RELIEF**

12.     Bankruptcy Rule 8007 provides that a motion for "a stay of a judgment, order, or decree of the bankruptcy court pending appeal … may be made in the court where the appeal is pending," Fed. R. Bankr. P. 8007(b)(1), as long as it is accompanied by a statement that a similar motion was made in the bankruptcy court and "either state[s] that the court has not yet ruled on the motion, or state[s] that the court has ruled and set out any reasons given for the ruling."  Fed. R. Bankr. P. 8007(b)(2)(B).

13.     The Supreme Court has recognized that where, as here, an adverse privilege ruling involves "new legal question[s]" or "extraordinary circumstances," courts "should not hesitate to certify an interlocutory appeal."  *Mohawk*, 558 U.S. at 111; *see also Henriquez-Disla v. Allstate*

*Prop. & Cas. Ins. Co.*, 2014 WL 3887750, at *5 (E.D. Pa. Aug. 7, 2014) ("a particularly injurious or novel privilege ruling" qualifies for certification under §1292(b) per *Mohawk*); *Irth Sols., LLC v. Windstream Commc'ns, LLC*, 2018 WL 1870140, at *1 (S.D. Ohio Apr. 19, 2018) (controlling question of law where "[r]esolution of the question here will determine whether the attorney-client privilege has been waived"); *In re Marvel Ent. Grp., Inc.*, 209 B.R. 832, 837 (D. Del. 1997) (granting interlocutory appeal where "the bankruptcy court's decision is contrary to well-established law").

14.     The subject of this appeal has nothing to do with bankruptcy law.  It concerns attorney-client privilege and when courts are obligated to follow incontrovertible Third Circuit precedent in analyzing subject-matter waiver, an issue squarely within this Court's expertise and on which there is significant public interest throughout the Delaware federal courts and far beyond given their reach.  In creating novel, unprecedented rules whereby Third Circuit law can be avoided by declaring, *inter alia*, that (i) legal advice is only privileged when it concerns confidential "facts and issues" and (ii) the agreed-upon use of categorical privilege logs waives the right to document-by-document privilege determinations, the Bankruptcy Court disregarded the law and upended sacrosanct expectations of privilege.

15.     The Bankruptcy Court created an irreconcilable paradox in order to avoid a waiver analysis.  Numerous documents reflecting legal advice that it ordered be produced *pre-dated* the first disclosures that led the Bankruptcy Court to conclude that they were not privileged.  Because the Bankruptcy Court rested its decision on a lack of privilege as a matter of law in the first place – rather than waiver (the elements of which could not be satisfied) – that means that, according to the Bankruptcy Court, the indisputably confidential legal advice was *never* privileged even had the subsequent alleged subject-matter disclosures never occurred.  Given that it was those

disclosures that were the entire basis for the Bankruptcy Court's finding of non-privilege, this finding is legally untenable. The Bankruptcy Court's decision was one of waiver in all but label in an apparent attempt to avoid applying binding subject-matter authority.

16.     In evaluating an application for a stay pending appeal, a court considers four factors: "(1) whether the [party] has made a strong showing of the likelihood of success on the merits; (2) will the [party] suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015) (citation omitted). Each of the factors strongly favors a stay here. As recognized by the Trust in its opposition to the stay motion below, "[t]he most significant among these factors are the movant's ability to demonstrate a likelihood of success (arguably the most important consideration) and irreparable harm in the event a stay is not granted." *See* Trust Opp. [D.I. 507] at 9 (citing *Ferrone v. RPP, LLC (In re RPP, LLC)*, 547 B.R. 158, 163 (Bankr. W.D. Pa. 2016)); *see also Revel*, 802 F.3d at 568 (*citing Nken v. Holder*, 556 U.S. 418, 434 (2009)). Consequently, in the event that this Court finds that the first two elements weigh in favor of granting this emergency stay (as it should for the reasons described below), the Court should grant Appellants' stay motion, even if the remaining two factors weighed against a stay (which, for the reasons stated below, they do not).

**A.      Appellants Have, At Minimum, A "Reasonable Chance" Of Obtaining Interlocutory Reversal Of The Order**

17.     A stay is warranted where the appealing party has at least "a reasonable chance, or probability, of winning." *Revel*, 802 F.3d at 568 (citation omitted). This is not an exacting standard: the Court need not determine that it is "more likely than not" the appellant will succeed, only that the appellant has a fighting chance. *Id.* at 569, 571 (party seeking the stay need only

show that its chances of succeeding on the merits are "significantly better than negligible but not greater than 50%").

18.     This standard is easily satisfied here given the wealth of Third Circuit authority that is contrary to the Opinion, which simply cannot be squared with governing principles of privilege law, and cites to no supporting authority.  In the interest of efficiency, rather than repeat their arguments regarding their chance of success, Appellants respectfully refer to and incorporate paragraphs 29-44 of their Motion for Leave [Appeal Dkt. 1], the main points of which are summarized below:

- The Bankruptcy Court committed legal error in finding that the Project Jazz Documents are not privileged, eviscerating fundamental principles of privilege law by stating that privileged attorney-client documents need to be produced because there was an alleged lack of confidentiality surrounding the "facts and issues" in the documents.  A finding that the disclosure of some documents (or about a general subject) render wholesale other *undisclosed* documents subject to production *is* subject-matter waiver and the Bankruptcy Court erred in refusing to perform the Third Circuit's mandated analysis.  *See* Opinion [D.I. 482] at 4 (Bankruptcy Court acknowledging that it did not engage in a subject-matter waiver analysis, claiming instead that "[t]he issue here … is whether the attorney client privilege attached in the first place – as the information was never confidential – not whether it was waived.  As such the cases cited by the YPF Defendants, such as *Westinghouse* … and *Teleglobe* … are inapposite").[6]  But even were it not a waiver finding in hiding,

---

[6]     As noted above, the "non-attachment of privilege in the first place" theory of the Bankruptcy Court cannot hold water given that many of the documents reflect legal advice rendered *before* any disclosures relied upon by the Bankruptcy Court in reaching its conclusion.

the Opinion at the very least raises a novel legal question about when confidential attorney-client legal communications can and cannot be privileged that warrants interlocutory appeal.  *See* Motion for Leave [App. Dkt. 1] at ¶¶ 31-34, 37-39.

- The Bankruptcy Court's decision to rest its denial of privilege further denied Appellants due process because the Trust had not even advanced this argument in its motion (having argued "waiver" of privilege), and thus Appellants lacked notice of any need to submit evidence of privilege other than by reference to their unchallenged privilege log certifying that these documents all reflected confidential communications with counsel for the purpose of receiving legal advice that had never been disclosed outside the attorney-client relationship, including to the Trust or its predecessors.  *See id.* at ¶ 36; *see also U.S. v. Microsoft Corp.*, 2017 WL 1788411 at *3 (W.D. Wash. May 5, 2017) ("privilege logs may establish applicability of the attorney-client privilege").

- The Bankruptcy Court committed legal error in not conducting a document-by-document review and stating that Appellants had waived their right to such review by agreeing to produce a categorical privilege log (with the Court's approval).  As Appellants repeatedly advised the Bankruptcy Court, pursuant to well-established case law and practice, the Bankruptcy Court should have determined which individual documents, or even portions of documents, are either privileged or subject to subject-matter waiver.  Moreover, the finding that the Trust was "tardy" in waiting until the "11th hour" to bring its motion could not justify the Bankruptcy Court's decision to order Appellants' production of all privileged documents to the

Trust because there was insufficient time for the Bankruptcy Court to conduct a document-by-document review.  *See id.* at ¶¶ 40-42.[7]

19.    Each of these rulings raise "new legal question[s]" and special circumstances that this Court "should not hesitate to certify" for interlocutory appeal.  *Mohawk*, 558 U.S. at 111.

20.    Critically, this appeal is not based on a factual finding that a particular document did not reflect legal advice or had been disclosed such that waiver was found over that single document.  Those are the types of privilege rulings that may not raise the kinds of novel legal questions or special circumstances for which interlocutory appeal may be warranted.  Rather, the Opinion was an audacious ruling that privilege does not even exist as a matter of law with respect to confidential legal advice on a subject that was allegedly non-confidential (the Trust's Opposition never disputed that this was the conclusion of the Bankruptcy Court).  While unsupported, none of the Bankruptcy Court's factual findings are relevant under existing law; the confidentiality of "facts and issues surrounding" the subject of the legal advice cannot and does not implicate the right of a party to receive confidential privileged legal advice.[8]

21.    Appellants submit that based on those arguments, they easily satisfy the reasonable chance of success prong of the test.

---

[7]    In its Opposition to the stay motion before the Bankruptcy Court, the Trust did not even attempt to defend the Bankruptcy Court's decision.  Instead, it just asserted (contrary to the record) that Appellants had never claimed a right to document-by-document review.

[8]    The untenable, heads-the-Trust-wins, tails-the-Appellants-lose, nature of the Opinion is best demonstrated by the fact that immediately after declaring that not a single undisclosed legal communication concerning Project Jazz is privileged solely because the "facts and issues surrounding" Project Jazz were not confidential as between Appellants and Maxus, the Bankruptcy Court refused to order the Trust to produce *Maxus's* documents pertaining to Project Jazz (specifically the sub-category of the SIC Investigation, a subject within the scope of the Court's blanket order against Appellants) because "[i]t cannot be disputed that the documents at issue are subject to the attorney client privilege."  Opinion at 6.

**B.      Absent A Stay, Appellants Will Suffer Irreparable Harm**

22.      The second factor is indisputably satisfied.  When considering whether there may be irreparable harm sufficient to warrant a stay, the Court must ask whether, in the event that the Bankruptcy Court's ruling is reversed, Appellants will have suffered harm in the meantime that cannot be undone.  *See, e.g.*, *Stuart v. State Farm Fire and Cas. Co.*, 2017 WL 5952872, at *3 (W.D. Ark. Jan. 25, 2017); *Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473, 474-75 (E.D. Va. 2011).

23.      Courts regularly find that "forced disclosure of privileged material may bring about irreparable harm."  *In re Lott*, 139 F.  App'x 658, 662 (6th Cir. 2005) (citation omitted); *see, e.g.*, *Zander v. Craig Hosp.*, 2010 WL 1571213, at *2 (D. Colo. Apr. 20, 2010) ("it is likely that irreparable harm could result if a stay is not granted … and privileged information is disclosed in the meantime").  *Cf. Invista N.A. S. À.R.L. v. M & G USA Corp.*, 2013 WL 1614971, at *3 (D. Del. Apr. 5, 2013) (declining to grant stay where documents at issue were merely confidential subject to a protective order and not privileged, "as with regard to documents that are arguably privileged, once disclosed, 'the privilege is eviscerated'") (citation omitted).

24.      While the Opinion found that the Project Jazz Documents "are not confidential and, thus, not privileged," Opinion at 4, it has never been subject to disagreement between the parties that the Project Jazz Documents (i) were properly logged as attorney-client communications, (ii) contained legal advice, and (iii) were never disclosed or shared with any other party or non-party to this litigation.  In other words, these are paradigmatic privileged communications.  Indeed, the document requests at issue explicitly seek production of "legal advice."  For example, "Category No. 11 contains communications . . . reflecting, in furtherance of or related to *legal advice of counsel* concerning a possible settlement of OCC's claims against the YPF Defendants in

connection with the Passaic River Litigation."  Motion to Compel [D.I. 452] at 3 n.2 (emphasis added).

25.     Thus, while the Motion for Leave is pending before the Court, the threat that undisclosed communications that the Trust concedes reflect "legal advice" (otherwise they are outside the scope of the requests), and which are logged as privileged, could be disclosed to its litigation adversary in this bet-the-company proceeding is an irreparable harm with the potential to "irremediably disadvantage[]" Appellants.  Even if the Trust is ultimately precluded from using the materials at summary judgment or trial (which itself would require leave to appeal to be granted and the decision reversed), "the cat is already out of the bag," and "there is no way to unscramble the egg scrambled by the disclosure."  *In re Ford Motor Co.*, 110 F.3d at 963 (in the context of whether a challenged discovery order is immediately appealable as a matter of right or reviewable by mandamus, noting that "appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials"); *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014).[9]  Consequently, just requiring Appellants to turn over these documents – which include, for example, Appellants' internal legal analysis of and strategy with respect to the alter ego and fraudulent conveyance claims brought by Occidental (the same claims now being pursued by the Trust) – inflicts irreparable harm on Appellants, and there is no adequate post-trial remedy when a client's privileged information is exposed in this way.

**C.     A Stay Pending Appeal Will Not Injure The Trust**

26.     While Appellants are exposed to the serious risk that its privileged communications may be exposed to its litigation adversary, the Trust will not experience any similar injury by the

---

[9]      *Mohawk*'s holding should not preclude a granting of the stay.  Given the significant privilege concerns and fundamental Third Circuit law at stake here, Appellants' instant request for a stay and the Motion for Leave are appropriate where, as here, the ruling "is of special consequence" to the litigation.  *See Mohawk*, 558 U.S. at 111.

limited relief that Appellants are seeking here, namely, a stay of their obligation to produce the Project Jazz Documents pending the Court's decision on the Motion for Leave. The only effect a stay will have on the Trust will be to temporarily delay their receipt of any Project Jazz Documents (if the Court does not overturn the Opinion altogether), pending completion of the appeal. Delay in and of itself is not prejudicial, and the Trust has identified no cases where a mere delay (of a few months at most) pending the outcome of an appeal was sufficient to warrant denying an otherwise meritorious stay motion. *See Enhanced Sec. Rsch. LLC v. Cisco Sys, Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25, 2010) (Farnan, J.) ("a stay may delay resolution of the litigation, but this alone does not warrant a finding that [a party] will be unduly prejudiced").[10] Indeed, the burden imposed by a few months' delay "is minimal," *N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co. LLC*, 2011 WL 4571727, at *4 (W.D. Pa. July 13, 2011) (finding there is "minimal harm, if any" in extending discovery to wait for decision on a motion when discovery has lasted over a year and a half), particularly where here, *the Trust* waited many months (indeed, more than a year) until the final two weeks of fact discovery to bring its Motion to Compel the Project Jazz Documents. The Trust could have easily had this issue (and any appeal) resolved long before depositions even began had it acted last October rather than "reserv[ing] its rights" to bring it at a more strategically advantageous time. As the Bankruptcy Court stated to counsel for the Trust in the August 12 hearing on the motion to compel when it suggested that the remaining depositions may need to be adjourned, "you kind of made your own bed here, in that you've asked for this relief rather late." Aug. 12 Tr. [D.I. 476] (Ex. D) at 64:16-25, 65:1-22.

27.     The Trust argued to the Bankruptcy Court that it would be prejudiced having to proceed with the remaining depositions and expert discovery without the benefit of the documents.

---

[10]     Judge Farnan (Ret.) is the Trustee.

Trust Opp. [D.I. 507].  That is a red herring, since the Court can correspondingly briefly adjourn the deadline for those events until resolution.  That is precisely what the Bankruptcy Court already ordered the parties to do at the September 1 Conference by suggesting all dates be moved for 30 days. At the September 14 hearing, the Bankruptcy Court suggested that the unidentified financial cost from a slight delay could cause prejudice, *see* Sept. 14 Tr. (Ex. C) at 23:21-25, 24:1-2, but there is no evidence of any such potential harm in the record and such argument would apply to every stay motion.[11]   Indeed, it would be exponentially more costly for the Trust (and all defendants) if it were to receive the Project Jazz Documents now, rely upon them for the remaining fact depositions and expert discovery, and then have to "unscramble the eggs," if even possible.

28.     Simply put, the Trust will not be harmed by Appellants' stay of compliance with the Order pending a decision by the Court on the Motion to Leave, but will in fact benefit in contrast to the alternative of a future reversal.  *See Wadhwa v. Dep't of Veterans Affs*, 2011 WL 13287074, at *2 (D.N.J. Feb. 1, 2011) (granting stay pending appeal of order requiring production of confidential patient records, as a "[f]ailure to grant a stay will entirely destroy appellants' rights to secure meaningful review.  On the other hand, the granting of a stay will be detrimental to the Journal (and to the public's interest in disclosure) only to the extent that it postpones the moment of disclosure.") (internal citation and quotation omitted).  As the Bankruptcy Court already found, *the Trust* was "tardy" in delaying its motion to obtain the Project Jazz Documents, and therefore any additional modest delay as Appellants exercise their appeal rights cannot be the source of any injury, let alone an injury that would counsel against granting the stay.

---

[11]     Out of the blue, the Bankruptcy Court suggested that delay could bankrupt the Trust.  To the contrary, the Trust has access to $15 million under an exit facility provided by Occidental, the Trust's largest beneficiary and the party primarily responsible for substantially all of the environmental claims against the Debtors, *see* Apr. 10, 2019 Tr. [D.I. 150] at 6:16-20, and the Trust recently settled with Greenstone Assurance Limited for $25 million, *see* Repsol International Finance B.V. Interim Consolidated Financial Report (July 29, 2021), at 21, https://www.repsol.com/content/dam/repsol-corporate/en_gb/accionistas-e-inversores/rif/2021/on29072021-repsol-financial-report.pdf.

**D.      The Public Interest In Preserving Legal Privilege Favors A Stay**

29.      The public's substantial interest in preserving privilege merits a stay of the Order. There can be no dispute that the legal privilege implicated by the Order and Appellants' Motion for Leave involves the most "sacred and so compellingly important" privileges, such that "courts must, within their limits, guard it jealously." *Haines,* 975 F.2d at 90.  Because the public has a strong interest in upholding legal privileges, and allowing the Court the opportunity to address Appellants' appeal prior to the conclusion of this case and thereby avoid the prospect of wasting millions of dollars and years of delay in retrying this case (at a significant cost to judicial resources), this factor also weighs in favor of granting a stay of Appellants' compliance with the Order and the need to produce the privileged Project Jazz Documents.

## CONCLUSION

WHEREFORE, Appellants respectfully request that the Court enter an order, substantially in the form attached hereto, granting a stay of the production of the Project Jazz Documents pending appeal of the Order.

Dated:  September 15, 2021
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**

Jeffrey A. Rosenthal (*pro hac vice pending*)
Ari D. MacKinnon (*pro hac vice*)
Mark E. McDonald (*pro hac vice pending*)

One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

-and-

**SIDLEY AUSTIN LLP**

John J. Kuster (*pro hac vice pending*)
Andrew Propps (*pro hac vice pending*)
Elizabeth Gates (*pro hac vice pending*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for the Appellants*

## Certification of Compliance

Undersigned counsel certifies that this document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A).  Excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 5194 words.

Dated:  September 15, 2021                          /s/ Matthew B. McGuire
                                                                         Matthew B. McGuire (No. 4366)

## Certification Pursuant to Local Rule 7.1.1

Pursuant to District of Delaware Local Rule 7.1.1, counsel certifies that they have conferred with Appellees' counsel on the relief sought by this motion, and Appellees have stated that they oppose this motion.

## Statement Pursuant to Bankruptcy Rule 8013(D)

The email addresses, office addresses, and telephone numbers for moving and opposing counsel are as follows:

| **LANDIS RATH & COBB LLP**<br>Adam G. Landis<br>Matthew B. McGuire<br>Nicolas E. Jenner<br>919 Market Street, Suite 1800<br>Wilmington, DE 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>          mcguire@lrclaw.com<br>          jenner@lrclaw.com<br><br>*Counsel for the YPF Defendants* | **CLEARY GOTTLIEB STEEN &**<br>**HAMILTON LLP**<br>Jeffrey A. Rosenthal<br>Ari D. MacKinnon<br>Mark E. McDonald<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br>E-mail: jrosenthal@cgsh.com<br>          amackinnon@cgsh.com<br>          memcdonald@cgsh.com<br><br>*Counsel for the YPF Defendants* |
|---|---|
| **SIDLEY AUSTIN LLP**<br>John J. Kuster<br>Andrew Propps<br>Elizabeth Gates<br>787 Seventh Avenue<br>New York, NY 10019<br>Telephone: (212) 839-5300<br>Facsimile: (212) 839-5599<br>E-mail: jkuster@sidley.com<br>          apropps@sidley.com<br>          elizabeth.gates@sidley.com<br>*Counsel for the YPF Defendants* | |

| **FARNAN LLP** | **WHITE & CASE LLP** |
|---|---|
| Brian E. Farnan | J. Christopher Shore |
| Michael J. Farnan | Erin M. Smith |
| 919 North Market Street | 1221 Avenue of the Americas |
| Wilmington, DC 19801 | Telephone: (212) 819-8200 |
| Telephone: (302) 777-0300 | Facsimile: (212) 354-8113 |
| Facsimile:  (302) 777-0301 | E-mail: cshore@whitecase.com |
| E-mail: bfarnan@farnanlaw.com | erin.smith@whitecase.com |
| mfarnan@farnanlaw.com | |
| | |
| *Counsel for the Maxus Liquidating Trust* | *Counsel for the Maxus Liquidating Trust* |